FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

01 DEC 18 AM 10: 56
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

WILLIAM SHERIDAN,

    Plaintiff,

CASE NO.: 6:01-cv-1485-Or1-18JGG

vs.

COLONIAL MANAGEMENT GROUP, L.P.,
a foreign limited partnership, authorized to do
business in the State of Florida,

    Defendant.
_____/

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, WILLIAM SHERIDAN, by and through his undersigned counsel, hereby sues Defendant, COLONIAL MANAGEMENT GROUP, L.P., a foreign corporation licensed to do business in the State of Florida, and alleges the following:

### INTRODUCTION

1. This action involves claims of age discrimination, retaliation and breach of contract against Defendant, COLONIAL MANAGEMENT GROUP, L.P. (hereinafter "CMG"), and is brought by Plaintiff, WILLIAM SHERIDAN ("SHERIDAN"), as a former employee of CMG.

2. SHERIDAN alleges violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621, *et seq.*, 29 U.S.C. 215, *et seq.*, and violation of the Florida Civil Rights Act of 1992, Florida Statutes, Chap. 760.

## JURISDICTION, VENUE AND PARTIES

3. This action arises under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621, *et seq.*, 29 U.S.C. §215, *et seq.* ("ADEA"). This Court is vested with jurisdiction to order back pay, front pay and liquidated damages pursuant to 29 U.S.C. §621 and 29 U.S.C. §215. This Court has jurisdiction over all state law claims pursuant to 28 U.S.C. §1331 and §1367. The state claim herein is for damages in excess of $75,000.00 and is therefore within the jurisdiction of this Court.

4. Venue is proper in the Orlando Division of the Middle District of Florida pursuant to 28 U.S.C. § 1391(a) and (c) because the unlawful employment practices were committed within this judicial district.

5. Plaintiff, SHERIDAN, is an individual who resided in Volusia County, Florida, during the time of his employment with CMG. At all times material herein, SHERIDAN was employed by CMG as a Vice President of Operations or Vice President of Research and Development.

6. Defendant, CMG, is a foreign limited partnership licensed to do business and doing business in the State of Florida. At all times material, CMG, was and is engaged in the operation of methadone treatment centers. CMG is an "employer" as defined by 29 U.S.C. § 630(b) and Fla. Stat. §760.02(7) because it is engaged in an industry affecting commerce and has more than 15 employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

7.  SHERIDAN timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission of Human Relations ("FCHR") alleging discrimination based on age and retaliation.

8.  This action is filed within 90 days from SHERIDAN's receipt of the EEOC Notice of Right to Sue which is attached hereto and incorporated herein as Exhibit "A."

9.  This action is filed within four (4) years of the unlawful acts. The FCHR has made no determination to date, and 180 days have passed since the filing of SHERIDAN's charge of discrimination. SHERIDAN has satisfied any and all administrative requirements precedent to the filing of this action pursuant to §760.11.

## GENERAL ALLEGATIONS

10.  SHERIDAN was employed with CMG and its predecessor for over 13 years. Throughout the course of his employment with CMG, SHERIDAN established himself as a reliable, hard working and dedicated employee, and was often commended on his work performance.

11.  CMG operates drug treatment centers. SHERIDAN was instrumental in assisting Dr. Randall Greene, the company's founder, in expanding the company from the one clinic opened in 1986 to the network of clinics and pharmacies that exists today. During the course of his employment with CMG and its predecessor, SHERIDAN personally opened over fifteen (15) Methadone treatment clinics, and established many beneficial relationships for CMG with the Food and Drug Administration, the Drug Enforcement Agency, and other federal, state, and local government agencies.

12.  In September 1997, Dr. Green sold the business, Colonial Management Group, Inc., to a new ownership group, the Warwick Group II, Inc. ("Warwick"). A condition of the sale was that SHERIDAN would remain in his position as Vice-President of Operations. Dr. Green and SHERIDAN remained with the new company, COLONIAL MANAGEMENT GROUP, L.P., ("CMG") and also became limited partners. SHERIDAN was reassured that his position was secure by Dr. Green and Mr. Paul Sprague, Warwick's President, on numerous occasions, and that "he did not need to worry about formalizing his employment agreement." In fact, Dr. Greene stated that the sale of the company was contingent on the continuation of SHERIDAN's employment agreement.

13.  According to his employment agreement with DEFENDANT and its predecessor, SHERIDAN received a base salary of $20,000.00 per year, and $2,500.00 in supplemental annual compensation for every 25 patients enrolled at designated clinics. This agreement was outlined in a Memorandum dated March 24, 1998, from Dr. Randall Greene to Mr. Don Sproat, Chief Financial Officer of CMG. (See Exhibit "B"). From the date of the sale of the company in September 1997, SHERIDAN was not paid in accordance with his agreement with CMG, and is owed compensation.

14.  On or about July 1998, CMG began an orchestrated pattern of eliminating older employees and replacing them with younger employees. On July 31, 1998, SHERIDAN's counterpart Vice President of Operations, Rosemary McNally, age 57, was terminated but not replaced, thereby doubling his areas of responsibilities without any increase in compensation.

15. From July 1998 until SHERIDAN's constructive termination on August 1, 2000, one (1) Vice President, one (1) Director of Pharmacy, four (4) Regional Directors and the company's Corporate Training Nurse, all over the age of 40, were terminated or forced to resign.

16. During this time, SHERIDAN was subjected to a campaign of unfair treatment designed to force him out of his position. In June 1999, SHERIDAN's salary was cut almost 50%, with a minimal decrease in responsibilities. Moreover, SHERIDAN was denied any increases in compensation or bonuses, which were routinely given to other employees during 1997, 1998 and 1999. Subsequently, on or about March 2000, SHERIDAN was demoted to the position of Vice President of Research and Development. SHERIDAN's responsibilities were dramatically reduced, his support staff was taken away, he was no longer involved in company decision-making, and was specifically told not to speak at meetings nor to communicate directly with any company directors. SHERIDAN was replaced by a substantially younger employee who was given the title of Chief Operating Officer ("COO"). SHERIDAN was then forced to report to the younger COO.

17. Beginning in April 2000, and continuing until his last day of employment, SHERIDAN routinely complained to upper management about being treated differently, and indicated to the COO that he believed it was because of his age. After he complained about the unfair treatment, SHERIDAN was subjected to retaliation.

18. In retaliation for his complaints, CMG set unrealistic goals for SHERIDAN, gave him unreasonable deadlines and an inadequate budget, and refused to give SHERIDAN the necessary resources or authority in order to undermine SHERIDAN's performance.

Additionally, SHERIDAN was routinely blamed for problems and decisions that were outside of his area of responsibility. Ultimately, SHERIDAN was told that he was going to be placed on probationary status and that his office would be moved from Daytona to Orlando after 13 years of faithful service to the company.

19. Because of the hostile working environment to which he was being subjected, SHERIDAN was forced to constructively terminate his employment effective August 1, 2000.

20. All conditions precedent to filing this action have been performed, have occurred or have been waived.

21. SHERIDAN has engaged the services of legal counsel and is obligated to pay legal counsel their fees incurred in the prosecution of this action.

## COUNT I
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

22. SHERIDAN repeats and realleges allegations contained in paragraphs 1 through 21 above.

23. CMG, by and through its agents, violated 29 U.S.C. § 621 *et seq.* and 29 U.S.C. § 215 *et seq.* by intentionally discriminating against SHERIDAN on the basis of his age and subjecting him to different terms and conditions of employment. CMG demoted SHERIDAN, denied him routine raises, reduced his salary, and forced him to constructively terminate his employment because of his age.

24. At all times material, SHERIDAN was a member of the protected class under 29 U.S.C. § 623(f) in that he was over the age of forty.

25. SHERIDAN had all the qualifications needed to and did, in fact, adequately and effectively perform all of the duties of his position.

26. CMG, by and through its agents, denied SHERIDAN raises and bonuses, demoted him, reduced his salary, and subjected SHERIDAN to a hostile work environment because of his age. This treatment was intended to force SHERIDAN to terminate his employment. Following SHERIDAN's demotion and subsequent termination, younger employees were retained and performed job duties that SHERIDAN was more qualified to perform based upon his years of training and experience in service to CMG.

27. A non-discriminatory reason does not exist to justify CMG's intentional disparate treatment of SHERIDAN.

28. CMG, by and through their agents, willfully discriminated against SHERIDAN on the basis of his age in violation of 29 U.S.C. § 626(b) and 29 U.S.C. § 216 by failing to promote SHERIDAN in violation of the ADEA.

29. The actions of CMG, by and through its agents, were willful and entitle SHERIDAN to liquidated damages pursuant to 29 U.S.C. § 626(b) and 29 U.S.C. § 216 to punish CMG for its actions and to deter it, and others, from such actions in the future.

30. The actions of CMG make reinstatement ineffective as a make whole remedy, entitling SHERIDAN to front pay in lieu of reinstatement.

31. As a direct, natural, proximate and foreseeable result of CMG's actions, SHERIDAN has suffered past and future pecuniary losses.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff, WILLIAM SHERIDAN, demands judgment against Defendant, COLONIAL MANAGEMENT GROUP, L.P., for back pay, front pay in lieu of reinstatement, liquidated damages, prejudgment interest, damages due to loss of fringe benefits, attorneys' fees and costs of this action, and such other relief as this Court deems just and proper.

## COUNT II
## VIOLATION OF CHAPTER 760, FLORIDA STATUTES
## AGE DISCRIMINATION

32.     SHERIDAN repeats and realleges allegations contained in paragraphs 1 through 21 above.

33.     CMG intentionally discriminated against SHERIDAN on the basis of age. At all times material, SHERIDAN was a member of a protected class under Fla. Stat. § 760.02 in that he was over the age of 40.

34.     CMG violated Fla. Stat. § 760.10, *et seq.* by intentionally discriminating against SHERIDAN, and subjecting him to different terms and conditions of employment. CMG denied SHERIDAN periodic salary increases as set forth in company policy, demoted SHERIDAN, reduced his salary, and forced him to constructively terminate his employment because of his age.

35.     SHERIDAN had all the qualifications needed to and did, in fact, adequately and effectively perform all of the duties of his position.

36. Following SHERIDAN's demotion and subsequent termination, younger employees were retained and performed job duties that SHERIDAN was more qualified to perform based upon his years of training and experience in service to CMG.

37. A non-discriminatory reason does not exist to justify CMG's disparate treatment of SHERIDAN.

38. The actions of CMG deprived SHERIDAN of his statutory rights under Florida Statutes Chapter 760.

39. The actions of CMG and/or their agents, managers and supervisors were willful, wanton, intentional and with malice or with reckless indifference to SHERIDAN'S legally protected rights, entitling SHERIDAN to damages in the form of compensatory and punitive damages pursuant to Florida Statutes Chapter 760.

40. The actions of CMG make reinstatement ineffective as a make whole remedy, entitling SHERIDAN to front pay in lieu of reinstatement.

41. As a direct, proximate and foreseeable result of CMG's actions, SHERIDAN has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience and mental anguish, loss of enjoyment of life, loss of dignity, emotional distress, humiliation and other nonpecuniary losses and intangible injuries.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff, WILLIAM SHERIDAN, demands judgment against Defendant, COLONIAL MANAGEMENT GROUP, L.P., for back pay, front pay in lieu of reinstatement, compensatory damages, punitive damages, prejudgment interest, attorneys' fees, costs of this action and such other relief as this Court deems just and proper.

## COUNT III
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
## RETALIATION

42. SHERIDAN repeats and realleges allegations contained in paragraphs 1 through 21 above.

43. CMG, by and through its agents, violated 29 U.S.C. § 623(d) and 29 U.S.C. § 215 *et seq.* by engaging in the unlawful employment practice of retaliation.

44. SHERIDAN engaged in the statutorily protected expression and/or activity of opposing discriminatory treatment, as more specifically described in the General Allegations section of this Complaint, wherein SHERIDAN indicated to the COO that he believed he was being treated differently because of his age.

45. In retaliation for SHERIDAN's protected activity, CMG subjected SHERIDAN to adverse employment actions. These retaliatory practices included, but were not limited to, forcing SHERIDAN to constructively terminate his employment.

46. The adverse actions suffered by SHERIDAN and the retaliatory actions taken by CMG, as have been more fully described above, were causally-related to SHERIDAN's statutorily protected activity.

47. At all times material, SHERIDAN was a member of the protected class under 29 U.S.C. § 623(f) in that he was over the age of forty.

48. SHERIDAN had all the qualifications needed to and did, in fact, adequately and effectively perform all of the essential functions of his position.

49. A legitimate non-discriminatory reason does not exist to justify CMG's intentional retaliatory treatment of SHERIDAN.

-10-

50. The effect of the practices complained of above has been to deprive SHERIDAN of equal employment opportunities and otherwise adversely affect his status as an employee because of his protected activity.

51. The unlawful employment practices complained of were willful, wanton, intentional and with malice or with reckless indifference to SHERIDAN's federally protected rights, entitling SHERIDAN to liquidated damages to punish CMG for its actions and to deter it, and others, from such actions in the future.

52. The retaliatory actions of CMG make reinstatement ineffective as a make whole remedy, entitling SHERIDAN to front pay in lieu of reinstatement.

53. As a direct, natural, proximate and foreseeable result of CMG's actions, SHERIDAN has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity and other non pecuniary losses and intangible injuries.

### DEMAND FOR RELIEF

WHEREFORE, Plaintiff, WILLIAM SHERIDAN, demands judgment against Defendant, COLONIAL MANAGEMENT GROUP, L.P., for back pay, front pay in lieu of reinstatement, liquidated damages, prejudgment interest, attorneys' fees, costs of this action and such other relief as this Court deems just and proper.

### COUNT IV
### VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
### RETALIATION

54. SHERIDAN repeats and realleges allegations contained in paragraphs 1 through 21 above.

55. CMG violated the Florida Civil Rights Act of 1992, Florida Statutes §760.10, et seq. by retaliating against SHERIDAN and/or subjecting him to adverse employment actions as have been more fully described in the General Allegations Section and in Count III of this Complaint, which are specifically repeated and realleged for purposes of this Count IV.

56. At all times material, SHERIDAN was a member of a protected class under Fla. Stat. § 760.02 in that he was over the age of 40.

57. A legitimate non-discriminatory reason does not exist to justify CMG's intentional retaliatory treatment of SHERIDAN.

58. The effect of the practices complained of above has been to deprive SHERIDAN of equal employment opportunities and otherwise adversely affect his status as an employee because of his protected activity.

59. The actions of CMG, by and through the conduct of its agents, managers and supervisors, were unlawful employment practices in violation of the Florida Civil Rights Act, Florida Statutes §760.10, et seq.

60. The adverse actions suffered by SHERIDAN and the retaliatory actions taken by CMG, as have been more fully described above, were causally-related to SHERIDAN's statutorily protected activity.

61. The unlawful employment practices complained of and the actions of CMG and/or its agents were willful, wanton, intentional and with malice or with reckless indifference to SHERIDAN's protected rights under the laws of the State of Florida, entitling

SHERIDAN to damages in the form of compensatory damages and punitive damages to punish CMG for its actions and to deter it, and others, from such actions in the future.

62. The retaliatory actions of CMG make reinstatement ineffective as a make whole remedy, entitling SHERIDAN to front pay in lieu of reinstatement.

63. As a direct, natural, proximate and foreseeable result of CMG's actions, SHERIDAN has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity and other non pecuniary losses and intangible injuries.

### DEMAND FOR RELIEF

WHEREFORE, Plaintiff, WILLIAM SHERIDAN, demands judgment against Defendant, COLONIAL MANAGEMENT GROUP, L.P., for back pay, front pay in lieu of reinstatement, compensatory damages, punitive damages, prejudgment interest, attorneys' fees, costs of this action and such other relief as this Court deems just and proper.

### COUNT V
### BREACH OF CONTRACT

64. SHERIDAN repeats and realleges allegations contained in paragraphs 1 through 21 above.

65. CMG offered SHERIDAN a contract compensating him at the rate of $20,000.00 per year for managing a "home base clinic," and $2,500.00 per year for every 25 patients enrolled at additional clinics that were SHERIDAN's responsibility. Additionally, SHERIDAN was offered a car allowance and health insurance. On or about September 1997, at the time Warwick purchased the company and formed CMG, SHERIDAN accepted

CMG's offer of employment as evidenced by his performance of his job duties following the sale. The terms of the agreement are outlined in a Memorandum dated March 24, 1998, from Dr. Greene to Mr. Sproat, Chief Financial Officer of CMG. (See Exhibit "B").

66. CMG, through the actions of its agents, partners, directors and officers, breached the terms of its contract with SHERIDAN by:

    (a) not paying SHERIDAN the full annual salary amount based on SHERIDAN's clinics' patient counts from September 1997 until June 1999; and

    (b) unilaterally reducing SHERIDAN's salary from June 1999 until August 1, 2000.

67. As a result of CMG's breach, SHERIDAN has suffered and will suffer lost wages, benefits, and consequential damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff, WILLIAM SHERIDAN, demands judgment against Defendant, COLONIAL MANAGEMENT GROUP, L.P., for compensatory damages, prejudgment interest, and such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, WILLIAM SHERIDAN, demands a trial by jury on all issues so triable in each count of this Complaint.

DATED this 18th day of December, 2001.

Respectfully submitted,

*Jill S. Schwartz, Esquire*

Jill S. Schwartz, Esquire
Florida Bar No.: 523021
Jeffrey Feulner, Esquire
Florida Bar No.: 149063
JILL S. SCHWARTZ & ASSOCIATES, P.A.
180 Park Avenue North, Suite 200
Winter Park, Florida 32789
Telephone: (407)647-8911
Facsimile: (407)628-4994

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## NOTICE OF RIGHT TO SUE
*(ISSUED ON REQUEST)*

| To: | From: |
|---|---|
| Mr. William S. Sheridan<br>c/o Mr. Jeffrey Feulner, Esquire<br>180 Park Avenue North, Suite 200<br>Winter Park, Florida 32789-7401 | Miami District Office<br>Equal Employment Opportunity Commission<br>One Biscayne Tower, Suite 2700<br>2 South Biscayne Boulevard<br>Miami, Florida 33131-1805 |

[ ] *On behalf of a person aggrieved whose identity is CONFIDENTIAL (29 C.F.R. 1601.7(a))*

| Charge Number | EEOC Representative | Telephone Number |
|---|---|---|
| 150 A1 2429 | Martin J. Rosenthal, Investigator | 305-536-7245 or 800-669-4000 |

(See the additional information attached to this form.)

## NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act(ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your suit under Title VII or the ADA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required). EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit based on this charge, please send a copy of your court compliant to this office.

On Behalf of the Commission

**SEP 19 2001**
(Date Mailed)

Federico Costales, District Director

Enclosures
  Information Sheet
  Copy of Charge

cc: **Colonial Management Group, L.P.**
    c/o Ms. Rosemary O'Shea, Esquire
    200 South Orange Avenue, Suite 2300
    Post Office Box 112
    Orlando, Florida 32802-0112

RECEIVED SEP 24 2001

EEOC Form 161-B (10/96)

Exhibit "A"

# Memorandum

**DATE:** March 24, 1998

**TO:** Don Sproat, CFO

**FROM:** Randall B. Greene, D. O.

**RE:** Vice President of Operations Compensation

---

Don:

I understand that there was some concern regarding the determination of the Vice President of Operations' compensation. Basically, each was given a base salary of approximately $20,000.00 per year (I would have to look back at pay records to find the exact amount) and the base pay included managing a "home base clinic". In the case of Rosemary, this was OMTC and in Bill's case, DMTC. For each additional clinic, the VP would receive $2,500.00 increase in annual compensation for each 25 patients enrolled at that facility. The $2,500.00 would be amortized over a one year period. There was also an agreement that if the census dropped for whatever reason, the annual compensation would be adjusted accordingly, i.e., if they lost the 25 patients, the $2,500.00 per year would be subtracted from their annual pay.

I also wanted to bring to your attention that Bill's base pay includes a car allowance and health insurance which he declined back in 1987. Rosemary's base pay, I believe, does not include her car allowance or health insurance since she opted to have these two items.

I realize by most standards that this would seem rather informal but with the trust and friendship that developed between Rosemary, Bill and myself, it was never necessary to formulate a written agreement, especially since it was so simplistic. If there are any questions or any concerns, please feel free to contact myself.

*[signature]*
Randall B. Greene, D. O.

RBG:glg

cc: Rosemary McNally, Vice President of Operations

cc: William Sheridan, Vice President of Operations

Exhibit "B"

## **VERIFICATION**

Personally appeared before the undersigned, WILLIAM SHERIDAN who, being first duly sworn, deposes and says that the allegations of this Verified Complaint for Damages and Demand for Jury Trial are true and correct to the best of his knowledge, information and belief.

_____
WILLIAM SHERIDAN

STATE OF FLORIDA
COUNTY OF ORANGE

The foregoing instrument was acknowledged before me this _14_ day of _December_, 200_1_, by WILLIAM SHERIDAN, who is personally known to me or who did take an oath.



FLORIDA                NOTARY PUBLIC, STATE OF

DORA DUMAS
Notary Public, State of Florida
My comm. expires Sept. 13, 2004
No. CC987787

_Dora Dumas_
Name of Officer

DATED this _14_ day of _Decem_, 200_1_.

JILL S. SCHWARTZ & ASSOCIATES, P.A.
180 Park Avenue North, Suite 200
Winter Park, FL 32789
(407) 647-8911

BY: _Jill A. Schwartz, Esquire_
Jill S. Schwartz, Esquire
Florida Bar No.: 523021
Counsel for Plaintiff